UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| AMANDA L. GRAY, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Case No. 2:17-cv-417 |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

This matter is before the court on petition for judicial review of the decision of the Commissioner filed by the plaintiff, Amanda L. Gray, on November 2, 2017. For the following reasons, the decision of the Commissioner is **REMANDED.**

*Background*

The plaintiff, Amanda L. Gray, filed applications for Disability Insurance Benefits and Supplemental Security Income on September 15, 2008, alleging a disability onset date of September 2, 1985. (Tr. 389). The Disability Determination Bureau denied Gray's applications initially on January 6, 2009, and upon reconsideration on March 17, 2009. (Tr. 237-240). The Administrative Law Judge (ALJ) issued an unfavorable decision on June 24, 2011. (Tr. 206-223). Gray filed a request for review of the ALJ's decision with the Appeals Council, and the Appeals Council issued an Order remanding the case to the ALJ. (Tr. 232-235). The ALJ issued a second unfavorable decision. (Tr. 13-38). The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-5).

Gray filed an appeal in the United States District Court Northern District of Indiana that was remanded by District Judge Jon E. DeGuilio on January 13, 2016. (Tr. 1441-1461). A third

hearing was held on August 11, 2016 before ALJ William E. Sampson, and the ALJ issued an unfavorable decision on September 15, 2016. (Tr. 1175-1196). Gray and her brother, Robert Gray, appeared and testified at the hearing. (Tr. 1175). Vocational Expert (VE) Carrie E. Anderson appeared telephonically at the hearing. (Tr. 1175). The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1161-1168).

Gray met the insured status requirements of the Social Security Act through December 31, 2008. (Tr. 1177). At step one of the five-step sequential analysis for determining whether an individual is disabled, the ALJ found that Gray had not engaged in substantial gainful activity since September 2, 1985, the alleged onset date. (Tr. 1177).

At step two, the ALJ determined that Gray had the following severe impairments: right upper extremity ulnar neuropathy, plantar fasciitis, bilateral calcaneal heel bursitis, bronchial asthma, morbid obesity, learning disorder, ADHD, dysthymic disorder, anxiety disorder, bipolar disorder, and personality disorder. (Tr. 1178). The ALJ determined that Gray's impairments caused more than minimal limitations in her ability to perform basic work-related activities and were considered severe. (Tr. 1178).

At step three, the ALJ concluded that Gray did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 1178). The ALJ considered listing 1.02 (major dysfunction of a joint) and listing 3.02 (chronic pulmonary insufficiency). (Tr. 1178). Additionally, the ALJ considered Gray's obesity in relation to the musculoskeletal, respiratory, and cardiovascular body system listings, as required. (Tr. 1178).

The ALJ also considered the severity of Gray's mental impairments, singly and in combination, against the criteria of listings 12.02, 12.04, and 12.06. (Tr. 1178). In finding that

Gray did not meet the above listings, the ALJ considered the paragraph B criteria for mental impairments, which required at least two of the following:

> marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration.

(Tr. 1178). The ALJ defined a marked limitation as more than moderate but less than extreme and repeated episodes of decompensation, each of extended duration, as three episodes within one year or once every four months with each episode lasting at least two weeks. (Tr. 1178).

The ALJ determined that Gray had mild restriction in activities of daily living, moderate difficulties in social functioning, and moderate difficulties in concentration, persistence, or pace. (Tr. 1178). Additionally, the ALJ determined that Gray had not experienced any episodes of decompensation which were of extended duration. (Tr. 1178). Because Gray's mental impairments did not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration, the paragraph B criteria was not satisfied. (Tr. 1181). Moreover, the ALJ concluded that the paragraph C criteria was not satisfied. (Tr. 1181).

After consideration of the entire record, the ALJ then assessed Gray's residual functional capacity (RFC) as follows:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can never climb ladders, ropes, scaffolds, kneel, crouch or crawl, or more than occasionally climb ramps or stairs. She can frequently but not constantly use the right upper extremity. She must avoid concentrated exposure to humidity, wetness, breathing irritants such as fumes, odors, dust, gases, loud noise, extremes of heat and cold, and vibration. She is limited to simple, routine, repetitive tasks, with occasional interaction with co-workers and supervisors, and no interaction with the public. She is limited to no production pace work.

(Tr. 1181).

The ALJ explained that in considering Gray's symptoms he followed a two-step process. (Tr. 1182). First, he determined whether there was an underlying medically determinable physical or mental impairment that was shown by a medically acceptable clinical or laboratory diagnostic technique that reasonably could be expected to produce Gray's pain or other symptoms. (Tr. 1182). Then, he evaluated the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limited Gray's functioning. (Tr. 1182). The ALJ determined that Gray's medically determinable impairments reasonably could have been expected to cause some of the alleged symptoms. (Tr. 1182). However, Gray's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. 1182).

The ALJ determined that Gray was limited to simple, routine, and repetitive tasks, which limited her to performing the same job on a daily basis. (Tr. 1193). This limitation accounted for her learning disorder and her history of special education. (Tr. 1193). Next, consistent with her social anxiety and her impulsivity, the ALJ found that she could have occasional interaction with co-workers and supervisors, but no interaction with the public. (Tr. 1192). The ALJ concluded that greater limitations were not supported by the evidence because Gray was able to attend anime conventions, work at the convention, talk to people at the convention, and seek out voice actors to obtain signatures. (Tr. 1193).

Next, the ALJ indicated that he considered the persistence, intensity, and limiting effects of Gray's symptoms on her ability to perform work-related activity. (Tr. 1193). The ALJ found that her symptoms were not entirely consistent with the evidence and her testimony. (Tr. 1193). Gray testified that she had problems with her memory and difficulty keeping her mind on things. (Tr. 1194). However, she testified that she could focus on something that she was interested in,

like Facebook and YouTube. (Tr. 1194). She also testified that she read comic series, fantasy, and the entire Harry Potter series. (Tr. 1194).

The ALJ considered the testimony of Gray's brother and gave it some weight. (Tr. 1195). However, the ALJ noted that while his opinions were entitled to some weight they did not support a finding of disability. (Tr. 1195). Additionally, the ALJ considered the third-party function report submitted by Gray's mother. (Tr. 1195). He gave it some weight and also noted that it did not support a finding of disability. (Tr. 1195). The ALJ's decision considered the opinions of the State agency medical consultants, State agency psychological consultants, and Gray's treating doctors. (Tr. 1188-1192).

At step four, the ALJ found that Gray had no past relevant work. (Tr. 1195). Considering Gray's age, education, work experience, and RFC, the ALJ concluded that there were jobs in the national economy that she could perform, including mail room clerk (106,300 jobs nationally), courier clerk (97,300 jobs nationally), and clerical checker (92,100 jobs nationally). (Tr. 1196). The ALJ found that Gray had not been under a disability, as defined in the Social Security Act, from September 2, 1985 through the date of this decision, September 15, 2016. (Tr. 1197).

*Discussion*

The standard for judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is limited to a determination of whether those findings are supported by substantial evidence. **42 U.S.C. § 405(g)** ("The findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive."); ***Moore v. Colvin***, 743 F.3d 1118, 1120–21 (7th Cir. 2014); ***Bates v. Colvin***, 736 F.3d 1093, 1097 (7th Cir. 2013) ("We will uphold the Commissioner's final decision if the ALJ applied the

5

correct legal standards and supported her decision with substantial evidence."). Courts have defined substantial evidence as "such relevant evidence as a reasonable mind might accept to support such a conclusion." ***Richardson v. Perales***, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 852 (1972) (quoting ***Consol. Edison Co. v. NLRB***, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 2d 140 (1938)); *see **Bates***, 736 F.3d at 1098. A court must affirm an ALJ's decision if the ALJ supported his findings with substantial evidence and if there have been no errors of law. ***Roddy v. Astrue***, 705 F.3d 631, 636 (7th Cir. 2013) (citations omitted). However, "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." ***Lopez ex rel Lopez v. Barnhart***, 336 F.3d 535, 539 (7th Cir. 2003).

Disability and supplemental insurance benefits are available only to those individuals who can establish "disability" under the terms of the Social Security Act. The claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. § 423(d)(1)(A)**. The Social Security regulations enumerate the five-step sequential evaluation to be followed when determining whether a claimant has met the burden of establishing disability. **20 C.F.R. §§ 404.1520, 416.920**. The ALJ first considers whether the claimant is presently employed or "engaged in substantial gainful activity." **20 C.F.R. §§ 404.1520(b), 416.920(b)**. If she is, the claimant is not disabled and the evaluation process is over. If she is not, the ALJ next addresses whether the claimant has a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities." **20 C.F.R. §§ 404.1520(c), 416.920(c)**; *see **Williams v. Colvin***, 757 F.3d 610, 613 (7th Cir. 2014) (discussing that the ALJ must consider the combined effects of the

claimant's impairments). Third, the ALJ determines whether that severe impairment meets any of the impairments listed in the regulations. **20 C.F.R. § 401, pt. 404, subpt. P, app. 1**. If it does, then the impairment is acknowledged by the Commissioner to be conclusively disabling. However, if the impairment does not so limit the claimant's remaining capabilities, the ALJ reviews the claimant's "residual functional capacity" and the physical and mental demands of her past work. If, at this fourth step, the claimant can perform her past relevant work, she will be found not disabled. **20 C.F.R. §§ 404.1520(e), 416.920(e)**. However, if the claimant shows that her impairment is so severe that she is unable to engage in her past relevant work, then the burden of proof shifts to the Commissioner to establish that the claimant, in light of her age, education, job experience, and functional capacity to work, is capable of performing other work and that such work exists in the national economy. **42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1520(f), 416.920(f)**.

Gray has requested that the court reverse the ALJ's decision and remand this matter for additional proceedings. In her appeal, Gray has argued that: (1) the ALJ and the Appeals Council failed to comply with the district court's remand order when they ignored substantial evidence supporting Dr. Munson's opinions; (2) the ALJ incorrectly evaluated Gray's work activity and her efforts to seek employment; and (3) the ALJ and Appeals Council failed to comply with the district court's remand order when they ignored substantial evidence that Gray required a job coach.

The ALJ issued an unfavorable decision on September 15, 2016. Gray filed exceptions to the ALJ's decision. However, the Appeals Council determined that it found no reason to assume jurisdiction, and the ALJ's decision became the final decision of the Commissioner. (Tr. 1161). When the Appeals Council declines review, the ALJ's decision becomes the final decision of the

Commissioner, and the district court reviews that decision for substantial evidence, based on the record as a whole. **20 C.F.R. § 404.984(b)(2)**.

Gray has argued that the ALJ failed to assess whether the opinions of Dr. Linda Munson, Gray's treating psychiatrist at Porter-Starke Services, were "inconsistent with the other substantial evidence in the case record", as required by 20 C.F.R 404.1527(c)(2). Gray contends that the ALJ ignored substantial evidence in violation of the district court's remand order. The court must consider whether the ALJ followed the district court's remand order and supported his decision with substantial evidence. The district court previously found that the ALJ provided no reason to give Gray's doctors, Dr. Munson and Dr. Kim, little weight. Judge DeGuilio ordered that the ALJ consider Dr. Munson's and Dr. Kim's opinions anew. Gray has argued that the ALJ again ignored substantial evidence that supported the opinions of treating psychiatrist, Dr. Munson.

A treating source's opinion is entitled to controlling weight if the "opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. **20 C.F.R. § 404.1527(c)(2)**; *see* **Bates v. Colvin**, 736 F.3d 1093, 1099 (7th Cir. 2013); **Punzio v. Astrue**, 630 F.3d 704, 710 (7th Cir. 2011); **Schmidt v. Astrue**, 496 F.3d 833, 842 (7th Cir. 2007). The ALJ must "minimally articulate his reasons for crediting or rejecting evidence of disability." **Clifford v. Apfel**, 227 F.3d 863, 870 (7th Cir. 2000) (quoting **Scivally v. Sullivan**, 966 F.2d 1070, 1076 (7th Cir. 1992)).

"'[O]nce well-supported contradicting evidence is introduced, the treating physician's evidence is no longer entitled to controlling weight' and becomes just one more piece of evidence for the ALJ to consider." **Bates**, 736 F.3d at 1100. Controlling weight need not be

given when a physician's opinions are inconsistent with her treatment notes or are contradicted by substantial evidence in the record, including the claimant's own testimony. *Schmidt*, 496 F.3d at 842 ("An ALJ thus may discount a treating physician's medical opinion if the opinion is inconsistent with the opinion of a consulting physician or when the treating physician's opinion is internally inconsistent, as long as he minimally articulates his reasons for crediting or rejecting evidence of disability."); *see, e.g.*, *Latkowski v. Barnhart*, 93 F. App'x 963, 970-71 (7th Cir. 2004); *Jacoby v. Barnhart*, 93 F. App'x 939, 942 (7th Cir. 2004).

If the ALJ decides that the treating physician's opinion should not be given controlling weight, the ALJ is "required by regulation to consider certain factors in order to decide how much weight to give the opinion." *Scrogham v. Colvin*, 765 F.3d 685, 697 (7th Cir. 2014). These factors are set forth in **20 C.F.R. § 404.1527(c)(1)-(5)** and include: 1) the length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship; 3) supportability; 4) consistency with the record as a whole; and 5) whether the treating physician was a specialist in the relevant area.

On January 15, 2010, Dr. Munson completed a mental residual functional capacity assessment (MRFC) and narrative report. She determined that Gray had moderate to moderately-severe limitations in the ability to work in coordination with or proximity to others without being distracted, ability to make simple work-related decisions, ability to respond appropriately to unexpected changes in the work setting and routines, and ability to travel in unfamiliar settings and use public transportation. (Tr. 694-695). In her narrative report, Dr. Munson found that Gray appeared to have cognitive deficits and poor intellectual/academic functioning which made it difficult for her to function at school or with mildly difficult

9

employment. (Tr. 697). Dr. Munson opined that Gray may be capable of low level work but it would have to be with occupational support. (Tr. 697).

Additionally, Dr. Munson completed a third MRFC on June 13, 2011. Dr. Munson determined that Gray had numerous marked and extreme losses in her abilities to perform and carry out very short, simple instructions, sustain an ordinary routine without special supervision, make simple work-related decisions, complete a normal workday or workweek without interruptions from psychologically based symptoms, and maintain socially appropriate behavior. (Tr. 850-853). The ALJ gave Dr. Munson's opinions very limited weight.

Gray contends that Drs. John Spores, Jack Garden, Daniel Kim, Victor Rini, and Craig Nordstrom had similar findings that supported Dr. Munson's findings. Additionally, Gray indicated that Drs. Joseph Cools and Larry Kravitz, who testified as medical experts at the hearings, supported Dr. Munson's findings. The ALJ assigned some limited weight to Dr. Cools' opinion, little weight to Dr. Kim's opinion, and some limited weight to Dr. Kravitz's opinion.

The district court previously found that the ALJ's decision lacked evidentiary support and ignored corroborating evidence. *Gray v. Colvin,* 2016 WL 160733, at *5 (N.D. Ind. 2016). Specifically, the district court noted,

> "The ALJ was required to assess whether the treating physician's opinions were 'inconsistent with the other substantial evidence in [the] case record[.]' 20 C.F.R § 404.1527(c)(2). The ALJ failed to do so. Nowhere in the ALJ's assessment of Dr. Munson's opinion does he engage with the evidence in the record. Specifically, this Court would note the substantial evidence set forth by Drs. Cools, Nordstrom, Spores, Rini, and Garden which supports Dr. Munson's opinions. Most notably, the ALJ fails to recognize the decreased Full Scale IQ scores from 91, while Gray was in school, (R. 590), to 84 in April 2011, (R. 757), and 79 in March 2013, (R. 1115). Additionally, Gray's GAF scores show a decline from 62 in December 2008, (R. 653), to 57 in April 2011, (R. 759). This evidence could support a finding of decline in Gray's condition, which the ALJ appears to have selectively ignored."

10

*Gray,* 2016 WL 160733, at *5.

In the instant matter, the ALJ cited some inconsistencies with Dr. Munson's findings and the medical evidence in the record. However, the ALJ did not discuss the opinions of Drs. Cools, Spores, Rini, Nordstrom, or Garden as they related to Dr. Munson's findings. The district court previously found "substantial evidence set forth by Drs. Cools, Spores, Rini, Nordstrom, and Garden which supports Dr. Munson's findings." *Gray,* 2016 WL 160733, at *5. The ALJ did not explain why the above doctors' opinions did not support Dr. Munson's opinions. Additionally, Dr. Kim, a treating psychiatrist at Porter-Starke, found limitations more severe than those of Dr. Munson. The ALJ also discussed that Gray's full-scale IQ scores suggested that she functioned in the average, to low average, to borderline range of intellectual functioning in discounting Dr. Munson's opinion. However, the ALJ failed to recognize the decrease in her IQ scores.

The ALJ selectively has discussed the record focusing only on evidence that supported his decision. This selective "cherry picking" prevents the court from assessing the reasonableness of the ALJ's decision to afford Dr. Munson's opinions "very little weight." *See* ***Kaminski v. Berryhill****,* 894 F.3d 870, 874-875 (7th Cir. 2018). An ALJ has a duty to consider all relevant medical evidence and cannot "cherry-pick" facts that support a finding of non-disability while ignoring evidence that indicates a disability finding. ***Myles v. Astrue****,* 582 F.3d 672, 678 (7th Cir. 2009). The ALJ did not, but should have, considered all the relevant evidence, including the medical opinions that supported Dr. Munson's opinions. Accordingly, the ALJ's decision lacks explanation by not discussing the supportability or the consistency of Dr. Munson's opinions with the record. Therefore, the ALJ failed to consider properly the opinions

of Dr. Munson. On remand, the ALJ should consider the consistency and supportability of Dr. Munson's opinions with the record as a whole.

Next, Gray has argued that the ALJ incorrectly evaluated her work activity and her efforts to seek employment in discounting her credibility and the medical evidence. Gray contends that the ALJ over-relied on her work history without considering evidence to the contrary. For example, the ALJ failed to consider that any work that she completed before July of 2013 was performed at a level below substantial gainful activity, that she was terminated from her employment baking donuts because of her impairments and their effect on her job placement, and that she lost her job at Awards America because of poor attendance, as well as lack of efficiency. (Tr. 1223, 1225).

Throughout the ALJ's decision he discounted medical opinion evidence and determined that Grays' symptoms were not entirely consistent with the record because she worked at Walmart and Awards America and sought employment. "There is no inherent inconsistency in being both employed and disabled." *Ghiselli v. Colvin*, 837 F.3d 771, 778 (7th Cir. 2016). "The fact that someone is employed is not proof positive that he is not disabled, for he may be desperate and exerting himself beyond his capacity, or his employer may be lax or altruistic." *Wilder v. Chater*, 64 F.3d 335, 338 (7th Cir. 1995). The Seventh Circuit has explained, the ALJ's "logic is backward: . . . a claimant's desire to work is not inconsistent with her inability to work because of a disability." *Hill v. Colvin*, 807 F.3d 862, 868 (7th Cir. 2015). Therefore, without considering all the evidence, the ALJ improperly discredited medical opinion evidence and Gray's subjective symptoms by over-relying on her prior work history and her pursuit in seeking employment.

Finally, Gray has argued that the ALJ failed to comply with the district court's remand order when he ignored substantial evidence that she required a job coach. During Gray's first hearing, Dr. Cools provided expert testimony that he agreed with Dr. Munson's finding that Gray would need occupational support. (Tr. 1345-1346). Also, Dr. Kravitz, the psychological expert who testified at Gray's second hearing, did not dispute that Gray would benefit from a job coach. (Tr. 1302). The district court's remand order suggested that "[t]he ALJ seek clarification about whether Gray is required to have a vocational expert and/or a job coach as a limitation. If the ALJ still finds Gray does not need support, the ALJ should make a finding as to why, and include the evidence that supports this determination." *Gray,* 2016 WL 160733, at *9.

Gray contends that the ALJ did not seek clarification nor did he include evidence that supported his determination that she did not need a job coach. The Commissioner has not presented an argument to the contrary. The ALJ found that with respect to occupational support, Gray was able to perform the job at Walmart and Awards America without the assistance of a job coach. The ALJ did not rely on any medical evidence in determining that a job coach was not necessary. "ALJs must not succumb to the temptation to play doctor and make their own independent medical findings." **Rohan v. Chater**, 98 F.3d 966, 970 (7th Cir. 1996). The ALJ failed to follow the district court's remand order to seek clarification about whether Gray is required to have a vocational expert and/or a job coach as a limitation and to include evidence that supports his determination. On remand, as previously ordered, the ALJ should seek clarification about whether Gray is required to have a vocational expert and/or a job coach as a limitation.

Based on the foregoing reasons, the decision of the Commissioner is **REMANDED** for further proceedings consistent with this order.

ENTERED this 9th day of May, 2019.

                                              /s/ Andrew P. Rodovich
                                              United States Magistrate Judge